IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KEITH A. ARRICK, SR.,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

CASE NO. 2:16-CV-00531
CRIM. NO. 2:14-CR-108(1)
JUDGE JAMES L. GRAHAM
MAGISTRATE JUDGE JOLSON

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. 70). This matter is before the Court on its own motion pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts. For the reasons that follow, the undersigned Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

### I.    FACTS AND PROCEDURAL HISTORY

On September 11, 2014, Petitioner pled guilty to sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a), (b), and 18 U.S.C. § 2. (Doc. 61 at 33; Doc. 67 at 1). Petitioner and the government entered into a plea agreement on August 27, 2014 ("Plea Agreement"). (Doc. 44). Pursuant to the Plea Agreement, the parties agreed to a sentencing range of 180 to 204 months incarceration. (Doc. 44 at ¶ 3). However, on the government's motion pursuant to 18 U.S.C. § 3553(a)(1), the Court granted a downward departure of an additional 18 months, and the Court accordingly imposed a sentence of 162 months incarceration and five years of supervised release. (Doc. 67). As part of the deal with the government, Petitioner waived his right to appeal his sentence, including the right to appeal his sentence collaterally through a 28 U.S.C. § 2255 post-conviction proceeding. (Doc. 44 at ¶ 11).

1

Petitioner retained, however, the right to challenge his sentence based on a claim of ineffective assistance of counsel or prosecutorial misconduct. (*Id.*).

Petitioner brought the instant motion on June 13, 2016. (Doc. 70). He claims that he was denied the effective assistance of counsel because his attorney failed to object to a three-level increase in his recommended sentence under the advisory United States Sentencing Guidelines ("the Guidelines"), based on his involvement with a minor(s), and claims that the Court improperly convicted or sentenced him on this basis. (*Id.* at 5–7). Petitioner also claims the Court incorrectly enhanced his sentence under the Guidelines. (*Id.* at 8–9).

II.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

To obtain relief under 28 U.S.C. § 2255, a prisoner must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).

In addition, "it is well-established that a § 2255 motion 'is not a substitute for a direct appeal.'" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (quoting *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982))). Accordingly, if a claim could have been raised on direct appeal, but was not, the Court will not consider the claim via a § 2255 motion unless the petitioner shows: (1) cause and actual

prejudice to excuse his failure to raise the claim previously; or (2) that he is "actually innocent" of the crime. *Ray*, 721 F.3d at 761 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

### III. DISCUSSION

#### A. Ineffective Assistance of Counsel

Petitioner claims he was denied his Sixth Amendment right to effective assistance of counsel. (Doc. 70 at 5–7). In analyzing this assertion, the Court first determines whether counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Next, the Court asks whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. *Strickland* sets a "high bar," and "[s]urmounting" it "is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Because a petitioner must satisfy both the deficient-performance and prejudice prongs to demonstrate ineffective assistance of counsel, if a court determines that a petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

In evaluating *Strickland*'s first prong—whether counsel's performance was deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" in order to "eliminate the distorting effects of hindsight[.]" *Id.* at 689. Here, Petitioner attacks counsel for not "submit[ting] a written objection to the miscalculation of his sentencing Guidelines at 34 with an additional 3 levels of enhancement which grouped him at a level of 37" because his victim was an adult. (Doc. 70 at 5). At base, Petitioner attacks counsel because he reads the statute under which he was convicted, 18 U.S.C. § 1591, to protect only minors, and his victim was an adult. (*See id.* at 7 (alleging that "it is crystal clear[] that counsel of record knew that the victim was an adult at the time of the offense,

3

[and] . . . the offense charged could not stand because it mentions the definition of 'sex trafficking of children' and not adults[.]").

Titled "Sex trafficking of children *or* by force fraud, or coercion," 18 U.S.C. § 1591 provides:

> (a) Whoever knowingly—
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, *or* that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

(emphasis added). Subsection (b)(1) states that if the offense "was effected by means of force, threats of force, fraud, or coercion . . . *or* if the [victim] had not attained the age of 14 years at the time of such offense," the punishment for the offense is imprisonment for 15 years to life. (emphasis added). As the Sixth Circuit has made clear, Congress's use of the disjunctive "or" means that § 1591 criminalizes not only the sex trafficking of children (with or without force, fraud, or coercion), but also criminalizes the sex trafficking of adults if done by force, fraud, or coercion. *See United States v. Afyare*, 632 F. App'x 272, 279 (6th Cir. 2016).

Consistent with the statute, the record shows that Petitioner was sentenced for sex trafficking an adult by force, fraud, or coercion—not for sex trafficking a minor. Petitioner pled guilty to Count Four of the indictment, which charged him with the sex trafficking by force, fraud, or coercion of "L.P., an adult female." (Doc. 1 at 11). In exchange for Petitioner's guilty

4

plea to Count 4, the government dismissed the remaining charges in Counts One through Three, Five, and Six and further agreed not to file additional charges against him relating to the activities in the indictment or any sex trafficking offenses that occurred in the Southern District of Ohio prior to the date of the indictment. (Doc. 61 at 12–13). The parties agreed to an appropriate sentencing range of 180 to 204 months. (*Id.* at 12). The parties also agreed that, under U.S.S.G. § 2G1.1,[1] Petitioner had a base offense level of 34, and that the special instruction contained in U.S.S.G. § 2G1.1(d) applied in determining relevant conduct. (*Id.* at 13-14).

>U.S.S.G. § 2G1.1(d) provides:
>
>(d) Special Instruction.
>
>>(1) If the offense involved more than one victim, Chapter Three, Part D (Multiple Counts) shall be applied as if the promoting of a commercial sex act or prohibited sexual conduct in respect to each victim had been contained in a separate count of conviction.

Application Note 5 also offers guidance:

>5. Special Instruction at Subsection (d)(1).--For the purposes of Chapter Three, Part D (Multiple Counts), each person transported, persuaded, induced, enticed, or coerced to engage in, or travel to engage in, a commercial sex act or prohibited sexual conduct is to be treated as a separate victim. Consequently, multiple counts involving more than one victim are not to be grouped together under § 3D1.2 (Groups of Closely Related Counts). In addition, subsection (d)(1) directs that if the relevant conduct of an offense of conviction includes the promoting of a commercial sex act or prohibited sexual conduct in respect to more than one victim, whether specifically cited in the count of conviction, each such

---

[1] U.S.S.G. § 2G1.1 provides:

>Promoting a Commercial Sex Act or Prohibited Sexual Conduct with an Individual *Other than a Minor*
>
>(a) Base Offense Level:
>
>>(1)  34, if the offense of conviction is 18 U.S.C. 1591(b)(1)[.]

(emphasis added).

> victim shall be treated as if contained in a separate count of conviction.

Petitioner agreed with—and indicated he understood—the terms of the Plea Agreement after the prosecutor reviewed the terms of that agreement at the time of his guilty plea.

> COURT: [I]s that [] your understanding of this plea agreement?
>
> DEFENDANT: Yes, sir.
>
> COURT: [I]s there anything about the plea agreement that you don't understand?
>
> DEFENDANT: I do now. I was a little confused at first, but [defense counsel] explained it to me over and over again.

(Doc. 61 at 16).

> COURT: Now, just to make it clear, if I accept the stipulated sentencing range in your plea agreement, then the Court wouldn't have to make a determination regarding the sentencing guidelines. . . . You're aware of that right?
>
> DEFENDANT: Yes, sir.

(*Id.* at 18). The Court then advised Petitioner of the consequences of the parties' agreement on the appropriate sentencing range, and Petitioner, after conferring with his attorney, stated that he had no questions. (*Id.* at 20–21).

Task Force Officer Dennis recited the following facts:

> On September 17th, 2013, ICE/HIS Task Force Officer Aaron Dennis was contacted by the Columbus Police Vice Unite regarding a potential sex trafficking situation. The Vice Unit had conducted a sting operation that led to the rescue of a minor female victim. The information provided by this victim revealed that Keith A. Arrick, Sr., had recently transported her from Lima to Columbus, Ohio, where he and Keith A. Arrick, Jr., had attempted to cause her to engage in commercial sexual activity. The information provided by the minor female also indicated that Arrick, Sr., was possibly involved in other sex trafficking offenses.

6

TFO Dennis conducted further investigation into the information provided by the juvenile victim and identified and interviewed two additional victims that were sexually exploited by Arrick, Sr. During the course of these interviews, the victims provided the following information.

Sometime between September 1 and September 17, 2013 M.W., an adult female, met Arrick, Sr., at a gas station in Covington, Kentucky. Arrick, Sr., posed himself as a potential friend/boyfriend to M.W. Shortly after M.W. met Arrick, Sr., he transported and maintained her in his vehicle at various locations in Covington, Kentucky, and Cincinnati, Ohio, and caused her to engage in commercial sex acts for his financial gain. During this time, Keith Arrick, Sr., also provided heroin to M.W. After a day or two, Arrick, Sr., transported M.W. from Covington, Kentucky, to Columbus, Ohio, in his vehicle and thereafter maintained M.W. at a hotel in Columbus, Ohio, where he and Keith A. Arrick, Jr., placed advertisements for M.W. in the escort section of the backpage.com, and instructed and caused M.W. to engage in commercial sex acts for their financial benefit. When M.W. indicated that she did not want to continue engaging in commercial sexual activity, Arrick, Sr., threatened her with physical violence.

Also, during the month of September, 2013, L.P., an adult female, met Arrick Sr., and Keith Arrick, Jr., at a gas station in Columbus, Ohio. During the encounter, Arrick, Sr., and Arrick, Jr., recruited L.P. to work as a prostitute for them. When L.P. agreed, Arrick, Sr., transported her to a motel in the Columbus, Ohio, area where he utilized a cellular phone to photograph L.P. in sexually suggestive poses. Arrick, Sr., then directed L.P. to place the photographs in an ad that was placed in the escort section of backpage.com. Arrick, Sr., also instructed L.P what she was to say to potential clients who called in response to the ad and what prices to charge for various commercial sex acts.

Between October of 2013 and February of 2014, Arrick, Sr., transported L.P. in his vehicle multiple times between Columbus, Ohio, Cincinnati, Ohio, and Covington, Kentucky. While traveling between these cities, Arrick, Sr., harbored and maintained L.P. at various hotels and motels that are part of national chains. While staying in these hotels, Arrick, Sr., continued to post or cause to be posted advertisements in the escort section of backpage.com, for the purpose of L.P. engaging in commercial sex acts for his financial gain. Arrick, Sr., would also obtain and withhold heroin from L.P. until she had earned the amount of money he desired from her performing commercial sex acts. Arrick, Sr., also used

> physical violence and threats of physical violence against L.P., such threats including that he would kill L.P. if she attempted to leave him.
>
> All of the forgoing occurred in the Southern District of Ohio and elsewhere.

(*Id.* at 22–24). Petitioner agreed with the truth of these facts, and the Court found a factual basis for the guilty plea. (*Id.* at 24–25).

Consistent with the Plea Agreement and U.S.S.G. § 2G1.1, the PreSentence Investigation Report concluded that Petitioner had a base offense level of 34 in view of the nature of his conviction under 18 U.S.C. § 1951(b)(1). (PreSentence Investigation Report at ¶ 38). His "combined adjusted offense level" was calculated to be 37 because three victims had been involved in the charge at issue:

> Keith Arrick, Sr. is before the Court after having pled guilty to Sex Trafficking by force, Fraud, or Coercion. This conduct is covered by U.S.S.G. 2G1.1. A special instruction located at U.S.S.G. 2G1.1(d)(1) indicates that if the offense involved more than one victim, chapter Three, Part D (Multiple Counts) shall be applied as if the promoting of a commercial sex act or prohibited sexual conduct with respect to each victim had been contained in a separate count of conviction. According to the Commentary, Application #1, the term "victim" means a person transported, persuaded, induced, enticed, or coerced to engage in, or travel for the purpose of engaging in, a commercial sex act or prohibited sexual conduct, whether or not the person consented to the commercial sex act or prohibited sexual conduct.
>
> There were three victims involved in this offense. The first victim was M.W. (victim #1). . . . The second victim was Jane Doe #1 (victim #2). . . . The third victim was L.P. (victim #3). . . . [T]he conduct involving these two victims is considered relevant conduct under U.S.S.G. 1B1.3. . . .
>
> The defendant is being held accountable for all acts and omissions he committed; and in the case of a jointly undertaken criminal activity, all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity for which the defendant would be otherwise accountable are used to

>determine the base offense level, pursuant to U.S.S.G. 1B1.3(a)(1)(A) and (B).[2]

(*Id.* ¶¶ 49-52). *See, e.g.*, *United State v. Curtis*, 243 F.3d 1270, unpublished, 2000 WL 1679515, at *2 (6th Cir. 2000) ("The special instruction in § 2G1.1(d)(1) directs that if the offense involved more than one victim, Chapter Three, Part D (Multiple Counts) of the Guidelines shall be applied as if the promoting of prostitution or prohibited sexual conduct in respect to each victim had been contained in a separate count of conviction.").

The record is clear. Neither Petitioner's conviction nor his sentence calculation was based upon his involvement with a minor. As such, Petitioner has not cleared *Strickland*'s high bar—counsel did not perform deficiently, and Petitioner's ineffective assistance of counsel claim is without merit.

---

[2] U.S.S.G. § 1B1.3(a)(1)(A), (B) provides:

>(a) Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
>
>(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
>(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—
>
>(i)    within the scope of the jointly undertaken criminal activity,
>
>(ii)   in furtherance of that criminal activity, and
>
>(iii)  reasonably foreseeable in connection with that criminal activity;
>
>that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

9

### B.  Sentencing Guideline Enhancement

Petitioner next challenges how his sentence was calculated under the Guidelines.  The Plea Agreement in this case contemplated and prohibited such a claim.  In relevant part, the Plea Agreement states:

> In exchange for the Rule 11(c)(1)(C) sentencing stipulation, Defendant KEITH A. ARRICK, SR. waives his right to appeal the sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the sentence collaterally through a post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255.

(Doc. 44 at 4–5).

At his guilty-plea hearing, Petitioner acknowledged that he had read, signed, and discussed the terms of the Plea Agreement with his counsel.  (Doc. 61 at 11).   He further indicated he had no questions about any of the provisions of his Plea Agreement.  (*Id.*).  The prosecutor proceeded to read the Plea Agreement (including the waiver provision) to the Court, and Petitioner confirmed his understanding of the Plea Agreement.  (*Id.* at 11–16).  Finally, the district judge directly asked Petitioner if he understood the waiver of appellate rights, including the right to bring a § 2255 motion.  Petitioner responded, "Yes, sir."  (*Id.* at 31–32).

Plea agreements, such as Petitioner's, are enforceable—as long as they were made knowingly and voluntarily.  *See Hunter v. United States*, 160 F.3d 1109, 1113 (6th Cir. 1998) ("[I]t is clear that an appeal-waiver provision in a plea agreement is binding so long as it is made knowingly and voluntarily.") (citing *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995); *United States v. Bazzi*, 94 F.3d 1025, 1028 (6th Cir. 1996); *United States v. Allison*, 59 F.3d 43, 46 (6th Cir. 1995)); *see also United States v. Hoskins,* No. CRIM. 03-55-KKC, Civ.A. 05-448, 2006 WL 1044269, at *3 (E.D. Ky. April 19, 2006) (holding that a criminal defendant may waive his right to appeal and the right to seek collateral relief) (citing *United States v. Watson,*

165 F.3d 486, 488–89 (6th Cir. 1999)). Here, Petitioner does not claim—and the record does not reflect—that his waiver of rights was anything but knowing and voluntary.

Because Petitioner "waive[ed] his right to appeal his sentence in a valid plea agreement, this Court is bound by that agreement . . . ." *United States v. Mizori*, 604 F. App'x 413, 417 (6th Cir. 2015) (internal quotation marks and citation omitted); *see also United States v. Toth*, 668 F.3d 374, 379 (6th Cir. 2012) ("Enforcing appeal waivers makes good sense," by providing the defendant a means of gaining concessions from the government, and saving the government time and money involved in arguing appeals) (citing *United States v. Elliott*, 264 F.3d 1171, 1173–74 (10th Cir. 2001)); *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003) ("When a [d]efendant waives his right to appeal his sentence in a valid plea agreement, this Court is bound by that agreement[.]") (quotation marks and citation omitted)); *Hernandez v. United States*, Nos. 99 CR 204 (JGK), 02 CV 1663 (JGK), 2003 WL 223467, at *3 (S.D.N.Y. Jan. 31, 2003) (holding that waiver of right to challenge sentence in plea agreement precluded defendant from raising the issue in § 2255 proceedings). Therefore, the waiver is enforceable and precludes Petitioner's instant challenge to his sentence.

## IV.  RECOMMENDED DISPOSITION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A district judge of this Court shall make a *de novo*

determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a district judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendatio*n will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

Date:  July 18, 2016                                              /s/ Kimberly A. Jolson
                                                                                KIMBERLY A. JOLSON
                                                                                UNITED STATES MAGISTRATE JUDGE