```
           IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

United States of America

    v.                                      Case No. 2:14-cr-108-1

Keith A. Arrick, Sr.

<u>OPINION AND ORDER</u>

Defendant pleaded guilty to Count 4 or the indictment, which charged him with engaging in sex trafficking by force, fraud or coercion in violation of 18 U.S.C. §1591(a)(1), (a)(2) and (b)(1). He was sentenced to a term of incarceration of 162 months, to be followed by a 5-year term of supervised release. The Bureau of Prisons ("BOP") reports that his projected release date is October 29, 2025. <u>See</u> www.bop.gov/inmateloc/ (last visited April 19, 2021).

On November 25, 2020, defendant filed a <u>pro se</u> motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act of 2018, due to the presence of COVID-19 at his institution. (Doc. 92). Defendant also asked to be placed on home confinement under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), §12003(b)(2), which permits the BOP to lengthen the maximum amount of time for which an inmate may be placed on home confinement under 18 U.S.C. §3624(c)(2). <u>See</u> CARES Act, Pub.L. 116-136, Div. B., Title II, §12003(b)(2). Defendant submitted a request for compassionate release to the warden on October 9, 2020, which was denied by the warden on October 28, 2020. Doc. 92, pp. 9-10. The government does not contest that defendant has exhausted his administrative remedies as required under §3582(c)(1)(A). Counsel was later appointed to represent the defendant. Counsel filed a supplemental

motion for compassionate release on March 31, 2021. Doc. 99. The government filed a response in opposition to the motions on April 19, 2021, arguing that defendant has not shown an extraordinary and compelling reason warranting his release, and that any grounds for release are outweighed by the statutory sentencing factors in 18 U.S.C. §3553(a). Doc. 101.

I. Home Confinement Under the CARES Act

Defendant has requested home confinement under the CARES Act. Under 18 U.S.C. §3621(b), the BOP has the sole authority to determine the place of a defendant's confinement. The BOP has the authority under to place a prisoner in home confinement for the shorter of ten percent of the term of imprisonment or six months. §3624(c). Under the CARES Act, the BOP director now has authority to grant home confinement to a larger group of prisoners. See United States v. Read-Forbes, No. 12-20099-01-KHV, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020). The BOP has the sole authority to decide whether home confinement under the CARES Act is appropriate. See United States v. Daniels, No. 4:08-CR-0464-SLB, 2020 WL 1938973 at *1-2 (N.D. Ala. Apr. 22, 2020); Read-Forbes, 2020 WL 1888856 at *5; United States v. Serfass, No. 3:15-39, 2020 WL 1874126, at *3 (M.D. Pa. Apr. 15, 2020). This court does not have the authority to release defendant on home confinement under the CARES Act, and defendant's motion for release under the CARES Act is denied.

II. Standards for Compassionate Release

The court can reduce a sentence under §3582(c)(1)(A)(i) if the

court finds that "extraordinary and compelling reasons warrant such a reduction[.]" §3582(c)(1)(A)(i). District courts have full discretion to define what constitutes an "extraordinary and compelling" reason. See United States v. Jones, 980 F.3d 1109, 1111 (6th Cir. 2020). The court must also consider the factors set forth in §3553(a) to the extent that they are applicable. §3582(c)(1)(A). If, after weighing the §3553(a) factors, the court decides that the motion is well taken, the court may reduce the term of imprisonment and may impose a new term of supervised release with or without conditions. §3582(c)(1)(A). Section 3582(c)(1)(A) does not authorize court to order that the defendant serve the remainder of his sentence on home confinement, but the court can order home confinement as a condition of supervised release. United States v. Spencer, No. 20-3721, 2020 WL 549832 (6th Cir. Sept. 2, 2020). The grant of compassionate release is at the discretion of the court. United States v. Kincaid, 802 F. App'x 187, 188 (6th Cir. 2020).

As the government notes, Section 3582(c)(1)(A) also requires that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" §3582(c)(1)(A). Defendant's request for release does not satisfy any definition of an "extraordinary reason" set forth in U.S.S.G. §1B1.13 and Application Note 1 to that section. However, the Sixth Circuit has held that the policy statements contained in §1B1.13 do not apply to cases in which an inmate files a motion for compassionate release, and that district courts have full discretion to define what constitutes an "extraordinary and compelling" reason without consulting the policy statement. See Jones, 980 F.3d at 1111.

3

Therefore, the court will not base its decision on the policy statements.

III. Reasons for Compassionate Release

A. Defendant's Medical Conditions and COVID-19

Defendant, who is 53 years old, argues that he is at an increased risk of serious illness from COVID-19 due to his health conditions, in particular, hypertension and hyperlipidemia. Hyperlipidemia is not on the Centers for Disease Control ("CDC") list of conditions which increase a person's risk of serious illness from COVID-19. According to the CDC, persons with hypertension might be at a higher risk of developing serious symptoms. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 15, 2021).

Defendant has submitted medical records which show a diagnosis of hypertension. On June 10, 2020, defendant was prescribed medication for hypertension and was told to return in one year. Doc. 99-1, p. 1. His condition was described as "Hypertension - Benign Essential." Doc. 99-1, p. 3. Another record indicates that his blood pressure was 137/76 on January 14, 2020; 136/83 on January 31, 2020; 128/79 on June 10, 2020; and 122/64 on February 5, 2021. Doc. 99-2, pp. 1-3. This shows an improving trend, and there is no evidence that defendant's blood pressure is not well controlled by medication. An individualized needs plan dated August 24, 2020, stated that defendant was classified as CARE1 (healthy or simple chronic care). Doc. 99-3, p. 1.

4

As to the risk posed by COVID-19, defendant is currently incarcerated at Hazelton FCI, which houses 1,487 inmates. See https://www.bop.gov/locations/institutions/haf (last visited April 19, 2021). The BOP reports that at this time, 1 inmate and no staff have tested positive, and that 141 inmates and 77 staff have recovered. See https://www.bop.gov/coronavirus (last visited April 19, 2021). These statistics indicate that the BOP has been taking significant steps to address the COVID-19 problem. The BOP is now working with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation to ensure that COVID-19 vaccines are administered to full-time staff and inmates.

The government has presented records indicating that defendant was offered the vaccine but refused to take it. Doc. 101-1, pp. 1-2. The government has cited cases in which courts have declined to find an extraordinary ground for release based on COVID-19 fears under such circumstances, concluding that a defendant cannot refuse the vaccine, with no legitimate reason being offered, while continuing to advocate for an early release. However, there is no need in this case to resolve the issue of whether an inmate's refusal to take the vaccine is a permissible factor to consider in deciding whether an extraordinary reason exists based on COVID-19. At Hazelton FCI, the BOP has already administered the vaccine to 369 staff and 1040 inmates. See https://www.bop.gov/coronavirus (last visited April 19, 2021). Defendant is substantially protected from the virus because almost 80 percent of the inmate population has either had the virus or received the vaccine. In addition, defendant has not shown that he is at an enhanced risk of serious illness due to his medical conditions if he contracts

5

COVID-19. Defendant's health conditions, as well as those conditions considered in light of the threat of COVID-19, do not constitute an extraordinary and compelling reason warranting a reduction in sentence.

B. Validity of Defendant's Conviction

Defendant also argues that he is entitled to compassionate release because his conviction under Count 4 was defective. Repeating an argument made in his motion to vacate under 28 U.S.C. §2255, see Report and Recommendation, Doc. 74, p. 3, defendant focuses on the caption of §1591, that being "Sex trafficking of children or by force, fraud, or coercion[.]" Defendant then argues that this section requires that the victim be a minor, whereas his case involved an adult female.

A motion for compassionate release under §3582(a)(1)(A)(i) is not the proper forum for attacking the validity of the defendant's underlying conviction. To so hold would permit defendants to circumvent the requirements applicable to post-sentencing motions to vacate under §2255. Defendant previously made the same arguments he advances here in his motion to vacate. Those arguments were unsuccessful, and the motion was dismissed. Doc. 79. Defendant cannot relitigate those issues again in his motion for compassionate release. In any event, defendant's argument is not well taken. The Sixth Circuit has held that §1591 criminalizes both sex trafficking of children and sex trafficking of adults by force, fraud or coercion. United States v. Afyare, 632 F. App'x 272, 279 (6th Cir. 2016). Count 4 properly charged defendant under

6

§1951(a)(1) and (a)(2) with sex trafficking by force, fraud or coercion of "L.P., an adult female." Doc. 1. Defendant's conviction for the offense in Count 4 is valid, and defendant's argument to the contrary does not present an extraordinary reason for compassionate release.

C. Conclusion

Considering all of defendant's arguments, individually and in combination, the court concludes that defendant has not shown an extraordinary and compelling reason for compassionate release.

III. §3553 Factors

The court must also address the applicable §3553(a) factors. The offense in this case was serious. The presentence investigation report ("PSR") stated that defendant recruited an adult female, L.P., to engage in commercial sex acts. Defendant obtained heroin for L.P., then withheld it from her to coerce her cooperation. Defendant also used physical force and threatened to kill her if she attempted to leave. From September, 2013, to February, 2014, defendant transported L.P. to and from Columbus, Ohio, Cincinnati, Ohio, and Covington, Kentucky, multiple times to perform commercial sex acts at hotels and motels. In calculating the guideline range, the probation officer also held defendant accountable for his activities involving two additional victims as relevant conduct. Count 4 carried a mandatory minimum penalty of 15 years (180 months). The guideline range calculated by the probation officer was 210-262 months. However, the plea agreement

under Fed. R. Crim. P. 11(c)(1)(C) called for a binding sentencing range of 108-204 months. The lenient sentence of 162 months imposed in this case was in the middle of that range, and was below the otherwise applicable guideline range and the statutory mandatory minimum.

As to the history and characteristics of the defendant, the PSR reported that defendant had a difficult childhood and was exposed to drugs at an early age. Defendant was physically and verbally abused by his mother and stepfather. In the past, defendant used marijuana, cocaine, heroin, methamphetamine and amphetamine. He also had mental health issues with depression and anxiety, and was diagnosed as having borderline intellectual functioning.

Defendant has presented evidence that he has completed 12 classes at the institution, including 5 drug abuse education classes and courses on anger management, parenting, and victim impact. Doc. 99-4, p. 1; Doc. 99-6, Doc. 99-7. Defendant also received his CDL certificate for a commercial driver's license, and has indicated his intent to obtain additional truck driving training and to pursue a job as a truck driver upon his release. Defendant has provided a record documenting that he was on the work detail from July 20, 2015, through September 3, 2020, and performed several different types of jobs in the institution. Doc. 99-5. Although commendable, this record is not out of the ordinary. Further, as the government notes, the sentencing judge recommended to the BOP that the defendant be enrolled in the RDAP program. Doc. 67, p. 2. There is no evidence that defendant has been enrolled in any type of intensive substance abuse program while

8

incarcerated. If released, he plans to reside with his daughter in Georgia.

At the time of his conviction in this case, defendant was in Criminal History Category IV. The PSR reported that from 1986 to 2003, defendant sustained approximately 36 convictions which received no criminal history points. The PSR reported 12 additional convictions from 2005 to 2013. Defendant downplays the significance of this record, arguing that these convictions were symptomatic of defendant's substance abuse problems. While many of these convictions were for relatively minor offenses, such as petty theft, intoxication, no driver's license, possession of cocaine, and disorderly conduct, some were more serious, such as a 1990 conviction for burglary, convictions for domestic violence in 1995 and 1998, convictions for assault in 1994, 2001 and 2008, and a conviction for aggravated assault with a deadly weapon (a handgun) in 1996. The sheer number of these prior convictions, spanning more than 25 years, highlights the need for the sentence in this case to deter defendant from committing further crimes and the need to protect the public from more crimes by the defendant. The fact that the record does not show that defendant has received any intensive substance abuse counseling further supports the risk of recidivism.

In imposing a sentence of 162 months, the sentencing judge already showed the defendant some considerable leniency. Defendant has been in custody since June 10, 2014, and has served a little over 82 months, or roughly half of his sentence. The reduced sentence sought by defendant would not be sufficient to reflect the seriousness of the offenses, promote respect for the law, provide

9

just punishment, afford adequate deterrence and protect the public from more crimes by the defendant.

IV. Conclusion

The court finds that defendant has failed to show the existence of an extraordinary and compelling reason for his release. The court further concludes that the §3553(a) factors warrant denying defendant's motion for a reduced sentence. Even assuming, _arguendo_, that defendant's health conditions and other concerns are sufficient to constitute an "extraordinary and compelling reason" for a sentence reduction, that reason is outweighed by the statutory factors which militate against defendant's early release. Defendant's motions for compassionate release (Doc. 92 and 99) are denied.

Date: April 22, 2021         s/James L. Graham
    James L. Graham
    United States District Judge